Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eleventh Circuit is now open according to law. God save the United States and its honorable court. Good morning. This is Judge Wilson in Tampa, Judge Pryor, Judge Joe Pryor is in Atlanta, and Judge Lagoa is in Miami. And we have two appeals that are scheduled for oral argument this morning. Ms. Geddes is our courtroom deputy, and she will be our timekeeper. And she will let counsel know when they have reached the point when they have two minutes left for their oral argument and when the 15 minutes or whatever time they have for their argument has expired. And we are ready to proceed with the first case. And that first case is Darrian Bryant v. Benjamin Ford, the Georgia Warden. And Sidney Renee Strickland is here for Bryant. And Matthew Crowder is here for the Georgia Warden. And Ms. Strickland, are you ready to proceed with your argument? Yes, Your Honor. You may. Good morning, and may it please the court. My name is Sidney Strickland, and I represent Appellant Darrian Bryant in this appeal from the dismissal of his 2254 petition. This court cannot affirm the district court's dismissal of Mr. Bryant's 2254 petition as untimely for two reasons. First, under Piaz, judicial notice was not properly taken in this case. But even setting that aside, this court cannot affirm because the district court used the wrong date in determining when Mr. Bryant's post-conviction proceedings became final. And the attorney… May I ask you a question, counsel? What is your position that what would be the correct date for when the appeal became final? Your Honor, the correct date to use would be the date of the remitter. That's from this court case in Dolphy v. Warden, 823 F. 3rd, 1342 from 2016. And, Your Honor, I do not know the date that the remitter was issued. It is not in the district court's record, and it is not available on the Georgia Supreme Court's website. So that is unknown. I do believe that the Attorney General's Office has put in their letter brief a date when they believe the remitter was issued. However, the Attorney General has not cited a source for where that date comes from. So I have been unable to see. And also, Your Honor, this court should not take any notice of a remitter date at this because it's generally not this court's practice on appeal to consider facts that were not before the district court. And there are numerous cases that hold that, including Freeling Enterprises, 192 F. 3rd, 1330 at 1341. And in fact, this would be the decisive fact in this case, in this appeal and in Mr. Bryant's 2254 petition. And so if this court were to take judicial notice at this point, it would be deciding the case based on facts not in the record. And this court has been disinclined to do so. And I have citations for that. A Fifth Circuit case, Garcia v. Marine Corp, 432 F. 2d, 6 at 8. And then Rickett v. Jones, 901 F. 2d, 1058 from 1990. And additionally, the part. This is Judge. This is Judge Wilson. Isn't that why you would take judicial notice of a date? Because it's not in the record and you can't rely on it? Yes. Isn't that the purpose for taking judicial notice? Yes, it is the purpose of taking judicial notice. However, my point, Your Honor, was that this court has been hesitant to do that in a decisive fact on appeal where it was not taken in the district court. And also doing so would run afoul of the Piaz decision itself. Piaz specifically and explicitly relied on the fact that when judicial notice was taken in that case, it was at the report and recommendation stage where the petitioner had an opportunity to object to both the propriety of taking judicial notice and to the actual fact that the court was taking judicial notice of. The court in Piaz said at page 653 that the procedure followed here gave Mr. Piaz an opportunity to be heard on the propriety of judicial notice. Thus, we see no abuse of discretion. So, if the court were to take judicial notice at this point, Mr. Bryant would not have had an opportunity to be heard. I expect that when Mr. Crowder presents his argument, he's going to tell us that the Georgia Supreme Court issued the remediator on November the 16th of 2017. If we were able to take judicial notice of that date as the remediator issuance date, wouldn't the petition still be untimely? Yes, Your Honor. If that is, in fact, the correct remediator date, the petition would be outside of the one-year statute of limitations. But again, Your Honor, Mr. Bryant has had no opportunity to verify that that is the remediator date and has no opportunity to be heard on the propriety of taking judicial notice at this point and whether that date is, in fact, correct. And in fact, the Piaz decision, when it found that there was no abuse of discretion in taking of the Florida Superior Court in which the petitioner had been convicted and gave the specific citation for the website where that was found and noted that those dockets reflected the dates of the proceedings from the first appearance all the way through the appellate court's resolution of the post-conviction motion. And because the district court had specifically stated the website and the case number in that case, both the petitioner and this court were able to go onto the same website and see exactly what the court was taking judicial notice of and to verify against any records that the petitioner may have had. And the court emphasized that these kind of safeguards are what allowed the court to affirm because these kind of safeguards, while the court may take judicial notice generally, there's particular importance in the context of determining the timeliness of 2254 petitions. As this court knows, this is Mr. Bryant's very last opportunity to be heard in court on these convictions. And as the PIAS court noted, it's often the case that inmates don't have ready access to their own legal papers. I believe that's the case in this situation here where Mr. Bryant did not have access to his original state habeas filings and therefore did not know the date and still does not know the date that the remitter was issued. But because in PIAS, the court gave specific citations to the website that had a thorough review of everything in the state court's docket, there the petitioner could actually see what the court was taking judicial notice of. Here, Mr. Bryant would have no opportunity to do so. This is Judge Wilson again. Didn't Mr. Bryant have an opportunity in the space provided on the section 2254 form to indicate the proper dates for determining whether or not his petition was timely? Yes, Your Honor. The 2254 petition does have a place for that. However, that goes back to what I was saying about the fact that Mr. Bryant apparently does not have access to his legal papers. Doesn't that go back to Judge Wilson's original question, which is on the face of the petition, it appears that the petition is untimely because he wrote that on his petition, Mr. Bryant wrote that the last date was October 18th of 2010, and then he wrote that the further appeal, the last date was 8-20 of 2015, which was incorrect. And then he notified the district court judge after the fact, after he issued the first order. And that's what the magistrate relied on. Yes, that's correct, Your Honor. That is what happened in this case. And again, I believe Mr. Bryant does not have access to the dates of his own legal proceedings. And if you look at PIAS, the court there specifically says that it is appropriate for the district court to sua sponte dismiss based on the statute of limitations only in some circumstances. It's generally best practice for the court to get the full complete state court record from... But the rule says if it plainly appears from the petition and the attached exhibits that the petitioner is not entitled to release the district court, the judge must dismiss the petition and direct the court, the clerk to notify the petitioner. So, I mean, I understand what the original petition says. And then your client filed his objections, which conceded that, in fact, he had the last date that the Georgia Supreme Court had looked at the case was in October of 2010. And then when he filed his amended objections, that's when he notified the district court that, in fact, he had had another appeal and the original date was 2015, not the original 2015 that he had put in the original petition. Yes, Your Honor. So, if you look at everything that Mr. Bryant filed... You have a two-minute warning. Okay. And if you look at everything that Mr. Bryant filed, then it does not appear on the face if you consider the petition as well as his objections and his amended objections, which the district court did consider. It does not appear on the face that the petition is untimely because he submitted that date in 2011 that the state habeas was filed. And then he did not have the date that the remediator was issued. So, based on the record before the district court and what was in the petition, the objections and the amended objections, the petition was not, in fact, untimely or clearly untimely. Ms. Strickland, this is Jill Pryor. Isn't it true that we can't conduct an abuse of discretion review without enough information to conduct a meaningful review? In other words, if we don't have the information... That's what... Let me put it this way. One of the reasons for the safeguards in Paez is this very thing. Yes, Your Honor. The court cannot conduct a meaningful review. Yes, Your Honor. I believe I pointed that out in my brief. I'm sorry about that. I believe I pointed that out in my brief. Counsel, your time has expired. Okay. Thank you. You can continue your answer. Okay, Your Honor. I was just going to say I completely agree with Judge Pryor. Because there is not enough in the record, this court cannot conduct a meaningful appellate review of what happened in the district court. And for that reason, this court cannot affirm the decision of the district court. Thank you. Thank you, Ms. Strickland. We'll hear from Mr. Crowder on behalf of the warden. Good morning. You may please the court. My name is Matthew Crowder. I'm here on behalf of Warden Benjamin Ford. In this case, the appellee, we respect the request that the court affirm the dismissal petition. And I did want to, at least at the outset, I think Judge Lagoa hit on this a little bit, is to go back and just kind of talk about how this progressed, starting with the filing of the petition. And in terms of the issue of taking judicial notice or not, because the petitioner, Mr. Bryant, has made an argument that it was improper to take judicial notice when that was done because he didn't have a chance to respond. And again, the face of the petition is a little bit scant in terms of information, or somewhat, as we found out later, inaccurate. Again, the face of the petition says that the habeas petition was filed on August 20th of 2015. And based on the face of the petition, which, of course, under Rule 4 screening process, that's what has to be looked at to determine if there's petition entitled to relief or not. Based on the face of the petition, and when the conviction was timely, and when the one year deadline to file a 2254 petition would have run, based on the information provided in the original state habeas petition, it was more than three and a half years, I believe, after the 2254 deadline ran, that the state petition was filed. Again, that's based on the information in the petition. And Ms. Strickland had argued that it appears that Mr. Bryant did not have access to the dates in the original proceedings. However, somehow, he apparently figured out when he got around to filing his, I believe he filed a motion to amend additional grounds and support, which apparently looks like it might have crossed in the mail with the district court's original order. After he filed the original petition, did not have the correct date, filed his objection to the report and recommendation, again, citing the August 2015 date, it was only in this third filing, the motion to amend additional grounds and support, that he came back and actually filed the state habeas petition in October 2011. So somehow, he got access to that date in some way, and then that's, of course, what the district court relied on. Mr. Prowler. This is Jill Pryor. What if the date in the original petition is wrong and it's clear from the record that it's wrong? Would you still say that from the face of the petition, it's untimely? Well, Your Honor, when you say the record, are you referring to... Well, let's say whether it's the docket or information that's easily available to the district court, but the date in the petition is wrong and makes it untimely, but it would be untimely according to the actual dates of the various filings and dispositions. Would you say under Rule 4, the petition was nevertheless untimely? Well, I think with Rule 4, when you have to look at it based on the petition and the attached exhibits, as the magistrate apparently did in this case, and saw that it was at least based on that information, several years untimely, then I think it was within the magistrate judge's authority to recommend that the petition be dismissed based upon the information that was provided, of course... But it seems to me that under your argument, that mistake could never be corrected, even if everybody knew that the petition was actually timely under the true facts. Is that your position? Well, Your Honor, I think that this obviously is a discretionary choice, whether the court wants to do that or wants to require a response from the state. And certainly, if judicial notice is taken, or if in this case, as the district court did, if a subsequent pleading is filed, either the objections to the report or recommendation, saying that, wait a minute, no, these states are wrong, then at that point, I think if it looks like there may be some reason that more information is needed, then the district court can certainly take judicial notice and abuse of investigation or require us to respond. This is Judge Legault. May I ask a question? Because it's sort of the same sort of general line of question. Because I have a concern. If you have a petition that's filed, and on its face it shows that it's untimely, now maybe the... Let's assume, for purposes of this hypothetical, that the defendant gets the date wrong, and it puts the date wrong incorrectly. But the magistrate finds it untimely on its face, and states, I'm finding it untimely because your petition says X, Y, and Z. Do you believe that the magistrate has an obligation or a duty to look at the docket to confirm the dates of the petition? I don't know that I would say it's a duty. I think it's certainly within their discretion. But I think there has to be some burden put on the petitioner. And I think as has been said, there are spaces for this to be discussed. There's all the spaces for the dates when a state abuse was filed. If there was an appeal, if there was sought to be an appeal from the state abuse petition, there's space on the 20-54 form to put in all that information, as well as the space near the back of the petition where it says, gives them about half a page, I think, worth of space to respond. That if the petition was... 20-54 petition is being filed more than a year after the conviction became final to explain that. This is a little different hypothetical, because here, obviously, Mr. Bryant filed an objection. Then the district court makes his ruling. There's a cross in the mail in terms of his amended objection. The district court rules on the amended objections and addresses the untimeliness argument in the amended objection. The question I have is, how can we, as the appellate court, verify or how do we have the ability with this record to know what the district court was relying on when we don't have any docket information or any kind? Normally, in these cases, you have the magistrate has made part of the record the docket entries or the record that the magistrate has relied on for purposes of calculating the timeliness or untimeliness of the petition. Here, we don't have that. How can we verify or how do we have the ability to either affirm this case or reverse this case? Well, a little bit of a multi-part response to that, Your Honor. Again, admittedly, in the district court's order, I believe it just says that it had reviewed the petitioner's state habeas proceedings and then uses the filing date the petitioner provided in that third pleading and then apparently did some investigating. All right. But how can we verify what the district court was looking at? Because normally, in all these other cases that the 11th Circuit has relied on, whether it's Paez or even other ones that we had, the magistrate or the district court has made as part of the record the docket and the state records that the court has looked at. And so we're then able to verify what they have looked at. How can we do that when we have no idea what the district court looked at? Well, and I understand if the court wants to send it back because of that, and it definitely is very scant in terms of what's in that order. There are some things that are able to be viewed online from the Georgia courts, but of course- Didn't the district court say that the clock begins to run on October the 16th of, what year is it, 2017? Yes, Your Honor. When the Georgia Supreme Court- and that is not the operative date. That's the wrong date. My question is, you say in your brief that November the 16th of 2017 is the operative date. And I guess what we're trying to figure out is, where'd you get that? Where'd you get that date? It's not in this record. Where'd you get that date? And Your Honor, I actually did have to request that. Admittedly, the Georgia Supreme Court's website, while in a CBC application case, while it will show that the case where it is denied a CBC application on a particular date and a remediator is issued, it will show on the website of her, the docket entry, that the status is remediator, but it will not show what the date the remediator issued. Okay, so we don't know the remediator date at all. And in fact, based on the answer you just gave me, we can't even take judicial notice of that date, November the 16th of 2017, because it's not a matter- not only is it not in this record, it's not a matter of public record. Is that right? At this point, Your Honor, the date of the remediator issuance does not appear on the Georgia Supreme Court's website for these cases. So if we can't even take judicial notice of the operative date, then I don't understand why we should not vacate the district court's order and send it back and then let you all fight about this at the district court level and let the district court determine what the operative date is. Well, and if the court is inclined to do that, then I would understand. And as Ms. Strickland said, you know, again, and as I said in my supplemental brief, admittedly, the remediator is not part of the record in this case at this point. And it can't be part of the record because there's no ability to take judicial notice of it. It's not public information. Not to my knowledge, based on what I have from my looking at the Georgia Supreme Court website now. May I ask you a question? So is it your understanding it's not based in this particular case or just in general they don't have that information, remediators for any case? In terms of denials of CBC applications, I mean, I looked at the record for this case specifically and that's what's showing. And there's just not an appearance on the website of the remediator issuance date itself, just that the status is remediator. And you agree that that is the operative date, the remediator date? You concede that? Yes. Under DALFA, yes, that's correct. Okay. But the one thing I did want to point out is that all these cases need to be decided on a case-by-case basis because there are plenty of times if we consider, again, just the face of this petition where the date was apparently three years untimely, at least based on the information that was provided, these things need to be looked at case-by-case basis because if a petition is clearly wildly untimely based on the information that was provided, then the Rule 4 screening process still needs to have the ability to screen these out at that stage. And I just want to make sure that that's our position, that if it's a closed case, then of course the district court or the magistrate judge has the authority to say, we think this looks like it may be untimely but we need further information until we want the state to respond. But we think that that needs to be done on a case-by-case basis. Mr. Crowder, this is Jill Pryor. I missed your answer to Judge Lagoa's question. On the Georgia Supreme Court's website, do they normally have the date of the remitted or not? In terms of CPC applications and state habeas cases, I believe they do not. I have not seen that, the actual Rooted in Richmond's date on that, on the website, on the online docket before. It will show that the remitted has been issued but not the date of the issuance. Thank you. And I did also want to respond to Ms. Strickland's argument about the state court record. I believe her position is that it's best practice to get the entire state court record. And I think as I stated in my original brief in this case, it's our position that the entire state court record is not really necessary. What you're dealing with is trying to figure out when the finality of a conviction was and we don't feel you need the entire state record to do that. Obviously, there are certain relevant documents from a criminal case that will shed light on that issue. But in terms of the entire complete state record, we don't feel that it's necessary to have to submit that in every case to determine if a 2254 petition is timely. So, I did want to make that point as well. And again, if the court feels that there's a need for further information based on what it sees in the petition, then it can certainly decide that it wants to require us to respond. But the one thing I would point out in terms of timing on this, the Pius decision, of course, in terms of judicial notice, talks about the need for safeguards, which we understand, and discusses what best practices were. But at the time that the district court issued the order in this case, the second order, this was, I think, more than a year before even the first Pius decision came out. And again, while the order just merely said that it had reviewed the state habeas proceedings and then outlined some of the dates, at least one of which was provided by Mr. Bryan himself, the date of the filing in October 2011, the best practices had not been defined in terms of what this court wanted district courts to do as it did in the Pius case. So, I just point that out that the district court was under no guidance at the point of issuing when this order was issued to know what it needed to do in terms of setting things out, as the court has talked about, in terms of the docket entry so that it can be verified. But, again, we feel that if the court needs to send it back for consideration of the remitted or date, which, again, we agree is the dispositive date of when the state habeas case was final, then it can certainly do that. But we don't, we still feel that there will be cases where dismissal at the Rule 4 stage is proper in that a court can take judicial notice of online information to do that without requiring us to respond. And if there are no further questions, I'll conclude at this time. All right. Thank you, Mr. Crowder. And, Ms. Strickland, I believe you have reserved some time for rebuttal. Yes, Your Honor. Well, based on the fact that there's no record before this court, for this court to affirm the district court's decision and the Attorney General's concession that this court cannot take judicial notice of the remitted or date, I believe the court must vacate the district court's order and send it back to the district court for a proper review of the timeliness or untimeliness of Mr. Bryant's petition. And if there are no further questions from this court, I would yield the rest of my time. All right. Thank you, Ms. Strickland. And I see that you were appointed by the court to represent Mr. Darien on this appeal. And the court thanks you for your service. Thank you. And, Ms. Strickland, you were also appointed to represent Shannon Copeland. Is that right? No, Your Honor. Okay. I'm sorry. All right. Well, thank you very much for your service. Okay. Thank you. Okay.